# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Christine M. Arguello

Civil Action No. 17-cv-02753-CMA

IN RE:

TERRY KENNETH VICKERY,

      Debtor.

---

TERRY KENNETH VICKERY,

      Appellant,

v.

DANNING, GILL, DIAMOND & KOLLITZ, LLP,

      Appellee.

---

## OPINION AND ORDER ON APPEAL

---

This matter is before the Court on Debtor Terry Kenneth Vickery's ("Debtor") appeal of the Bankruptcy Court's November 2, 2017 Opinion and Order on Remand Granting in Part Judgment on Nondischargeability Claim Under 11 U.S.C. § 523(a)(2)(A) for Actual Fraud in Adversary Proceeding No. 11-1164-TBM, Bankruptcy Case No. 10-41118-TBM.  Chapter 7 Trustee Danning, Gill, Diamond & Kollitz, LLP ("Trustee") opposes Debtor's appeal.  In determining this matter, the Court has considered the designated record (Doc. ## 9-1–9-4), and the written arguments of parties, including Debtor's Opening Brief (Doc. # 13), Trustee's Answer Brief (Doc.

# 14), and Debtor's Reply Brief (Doc. # 18), as well as relevant authorities.  Exercising

jurisdiction pursuant to 28 U.S.C. § 158, the Court affirms the Bankruptcy Court's

November 2, 2017 Opinion and Order.

## I.    PROCEDURAL BACKGROUND

Over the past 24 years, Trustee has been on a quest rivaling Odysseus's

formidable journey to Ithaca to recover assets of the estate of IVDS Interactive

Acquisition Partners ("IIAP").  The Court has little interest in writing its own Homeric epic

and thus looks to previous orders related to Debtor's instant appeal, from which the

Court now quotes at length.   The following facts are undisputed:

> In the early 1990s, investment in interactive television systems became a
> potentially lucrative source of income, and by the mid–1990s certain
> bandwidths became eligible for licensing by the Federal Communications
> Commission for Interactive Video and Data Services ("IVDS"). IIAP was
> created in 1994 by [Debtor] Mr. Vickery and others for the purported
> purpose of purchasing IVDS licenses in large geographic areas, setting up
> IVDS systems, and profiting from the endeavor. Mr. Vickery did not have
> an ownership interest in IIAP, but was one of its promoters. Mr. Vickery
> was, however, the president and sole stockholder of Digital Interactive
> Associates, Inc. ("DIA"), which was set up at approximately the same time.
> The purported purpose of DIA was to raise $6 million from potential IIAP
> investors to be used by IIAP to obtain IVDS licenses.

*In re Vickery*, 488 B.R. 680, 682 (10th Cir. BAP (Colo.) 2013).

> In 1995, [IIAP], a Florida general partnership, filed for bankruptcy
> protection in the Central District of California under Chapter 11. The case
> was converted to Chapter 7 and . . . Mr. Richard K. Diamond, was
> appointed Chapter 7 trustee.[1] In that case, [Trustee] initiated an
> adversary proceeding (hereinafter, the "IIAP Adversary Proceeding")

---

[1] Richard K. Diamond was the first Chapter 7 trustee of the bankruptcy state of IIAP.  On March 19, 2019, this Court substituted Danning, Gill, Diamond & Kollitz, LLP ("Danning Gill") for Diamond upon his request.  (Doc. # 23.)  Danning Gill is therefore presently the trustee of IIAP's bankruptcy estate.  The substitution of the trustee does not affect the posture of this matter.

against the Debtor, Mr. Terry Vickery, and others [in a California federal district court].

*In re Vickery*, 526 B.R. 872, 875 (D. Colo. 2015).

## A.   THE IIAP ADVERSARY PROCEEDING IN CALIFORNIA FEDERAL DISTRICT COURT

In the IIAP Adversary Proceeding, [Trustee] sought to avoid and recover $3.6 million in transfers to the Debtor and other defendants under 11 U.S.C. § 544. He argued that the transfers were fraudulent and therefore voidable under Florida law. . . . [Trustee] asserted three claims that the transfers were fraudulent under the Florida Uniform Fraudulent Transfer Act (FUFTA): (1) under FUFTA § 726.105(1)(a), based on evidence that the transfers were made with the actual intent to hinder, delay, or defraud IIAP; (2) under FUFTA § 726.105(1)(b)(i), based on evidence that IIAP's assets were unreasonably small in relation to what was required to satisfy its obligations; and (3) under FUFTA § 726.105(1)(b)(ii) based on evidence that at the time of the transfers, IIAP intended to incur, or should have believed that it would incur, debts beyond its ability to pay.
         . . . Further, [Trustee] claimed that [it] was entitled to punitive damages because the Debtor and other defendants had allegedly conspired to cause IIAP to transfer the funds and that they acted willfully and with actual malice or wanton disregard of IIAP's creditors.

*Id.* at 878–79.  Relevant to the instant appeal is Trustee's first claim for relief:

In the First Claim for Relief, [Trustee] sought recovery of the Subject Transfers under section 726.105 of the Florida Uniform Fraudulent Transfer Act ("FUFTA"). This claim required him to prove that the Subject Transfers were made to the Defendants by [IIAP], with **actual intent to hinder, delay, or defraud creditors** of [IIAP]. In the Pretrial Order, the Trustee asserted that actual intent to defraud would be shown through a number of badges of fraud; he made no mention of how actual intent to hinder or delay would be shown.

*In re Vickery*, No. 10-04118 ABC, Adv. No. 11-01164, 2011 WL 4963136, *2

(Bankr. D. Colo. Oct. 17, 2011) (emphasis added).

After a nearly two-week jury trial in the California federal district court, the jury

returned a verdict in favor of Trustee on all three claims for relief.  It "found that $3.6

million was fraudulently transferred by IIAP and that the defendants conspired to cause IIAP to make the transfers to them or for their benefit." *In re Vickery*, 526 B.R. at 878–79. As to Trustee's first claim:

> For the first claim for relief, that "[IIAP] made a transfer or incurred an obligation with the actual intent to hinder, delay, or defraud any creditor of [IIAP]," in response to the question, "Do you the jury ... unanimously find in favor of the [Trustee] as Chapter 7 trustee for the bankruptcy estate of [IIAP] and against defendants?," the jurors answered, "Yes" as to [Debtor] Terry Vickery. Further, the jury answered, "Yes" as to Terry Vickery in response to "We the jury unanimously find that the defendants' action in this case were part of a conspiracy to have [IIAP] make fraudulent transfers to them or for their benefit." The jury assessed **actual and compensatory damages on this claim against Vickery and in favor of Diamond in the amount of $400,000**. The jury also assessed a total of **$1,040,000 in actual and compensatory damages against other defendants**. (Pl.'s Mem. Ex. E, Apr. 13, 2007 Tr. at 5:16–24.)

*In re Vickery*, 2011 WL 4963136 at *4 (emphasis added). After finding for Trustee and assessing actual and compensatory damages against Debtor also on the second and third claims,

> The jury also answered "yes" in response to three interrogatories as to whether the Debtor had acted maliciously, oppressively, and in reckless disregard of IIAP creditors' rights. As a result, the jury awarded $1 million in punitive damages against the Debtor individually and additional amounts against the other defendants.

*In re Vickery*, 526 B.R. at 878–79.

At its end, the IIAP Adversary Proceeding culminated in 2007 with a judgment in favor of Trustee and against Debtor and other defendants in the amount of $4.6 million plus interest. *Id.* at 875. Trustee subsequently domesticated in Colorado the judgment from in the IIAP Adversary Proceeding.

**B.    THIS ADVERSARY PROCEEDING IN THE COLORADO BANKRUPTCY COURT**

In December 2010, Debtor filed for bankruptcy protection under Chapter 7 in the District of Colorado (the "Colorado Bankruptcy Court").  *In re Vickery*, Bankruptcy No. 10-41118 (Bankr. D. Colo.).

In 2011, Trustee commenced this adversary proceeding against Debtor by filing a Complaint to Determine Dischargeability of Debt in the Colorado Bankruptcy Court. Trustee seeks a determination that the judgment against Debtor entered in the IIAP Adversary Proceeding in California (the "judgment debt") is nondischargeable debt Debtor owes IIAP's bankruptcy estate pursuant to 11 U.S.C. §§ 523(a)(2), (4), and/or (6).  *See In re Vickery*, No. 10-04118 ABC, Adv. No. 11-01164, 2012 WL 2022502 (Bankr. D. Colo. June 5, 2012), *aff'd in part, rev'd in part*, 488 B.R. 680 (10th Cir. BAP (Colo.) 2013), *and aff'd*, 526 B.R. 872 (D. Colo. 2015).  Specifically,

> [Trustee] argued that the judgment debt is nondischargeable because it was (1) **a debt for funds obtained "under false pretenses, false representations or actual fraud" under § 523(a)(2)**; (2) a debt for "fraud and defalcation, while acting in a fiduciary capacity to [IIAP]" under § 523(a)(4); and/or (3) a debt for "willful and malicious injury to [IIAP] and its property" under § 523(6).

*In re Vickery*, 526 B.R. at 875 (emphasis added).

The appeal presently before this Court concerns Debtor's first argument, alleging actual fraud under Section 523(a)(2)(A).  Section 523(a)(2)(A) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>  . . .

     (2) for money, property, services, or an extension, renewal, or refinancing
    of credit, to the extent obtained by--
         (A) false pretenses, a false representation, or **actual fraud**, other
         than a statement respecting the debtor's or an insider's financial
         condition; . . .

11 U.S.C. § 523(a)(2)(A) (emphasis added).

     Trustee moved for summary judgment "entirely on the law of preclusion, in that [Trustee] assert[ed] that the facts established in the [IIAP] Adversary Proceeding . . . establish the nondischargeability of the judgment debt." *In re Vickery*, 2011 WL 4963136 at *1.

     In denying Trustee's Motion for Summary Judgment on October 17, 2011, the Colorado Bankruptcy Court began with a comprehensive review of the IIAP Adversary Proceeding, noting that Debtor did not dispute any of the underlying facts of the case, *id.* at *1–5, and with an explanation of the Court of Appeals for the Ninth Circuit's doctrine of issue preclusion, *id*. at *6–7. [2]  Because it was undisputed that the IIAP Adversary Proceeding ended with a final judgment on the merits and that Debtor was a party to that proceeding, the question for the Colorado Bankruptcy Court, in its view, was "whether the issues determined by in [sic] the [IIAP] Adversary Proceeding were (a) necessarily decided and (b) identical to the elements that [Trustee] must establish in order to prove his claims under §§ 523(a)(2), (4), and (6)." *Id.* at *7.  With respect to

---

[2] The Colorado Bankruptcy Court applied the law of the U.S. District Court for the Central District of California, including the law of the Ninth Circuit Court of Appeals and the U.S. Supreme Court, because "[r]ules for application of preclusion principles are determined by the law of the forum in which the prior judgment was rendered." *In re Vickery*, 2011 WL 4963136 at *6 (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).  The prior judgment was the judgment entered by the California federal district court in the IIAP Adversary Proceeding.

Trustee's first nondischargeability claim pursuant to Section 523(a)(2)(A), the Colorado

Bankruptcy Court explained:

> With respect to a nondischargeability claim predicated on false representation or actual fraud, **a plaintiff must establish the following elements: (1) the defendant made a false representation**; (2) the defendant made the representation with the intent to deceive the plaintiff; (3) the plaintiff relied on that representation; (4) the plaintiff's reliance as reasonable; (5) the debtor's representation caused the creditor to sustain a loss. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir.1996). The creditor bears the burden of proving all elements of a claim under § 523(a)(2)(A).

*Id*. at *8 (emphasis added).  For reasons irrelevant to the instant appeal, the Colorado

Bankruptcy Court denied Trustee's Motion for Summary Judgment as to Trustee's first

nondischargeability claim pursuant to Section 523(a)(2)(A) and as to Trustee's two other

nondischargeability claims pursuant to Sections 523(a)(4) (fraud or defalcation while

acting in fiduciary capacity) and 523(a)(6) (willful and malicious injury).  *Id.* at *12.

The Colorado Bankruptcy Court conducted a three-day trial on this adversary

proceeding in March 2012.  *In re Vickery*, 2012 WL 2022502 at *1.

On June 5, 2012, the Colorado Bankruptcy Court issued its Findings of Fact,

Conclusions of Law, and Ruling.  *Id*.  As to Trustee's Section 523(a)(2)(A) claim that the

judgment debt is a debt for false representations or actual fraud, the Colorado

Bankruptcy Court held:

> In its prior rulings in this case, the Court has rejected [Trustee]'s claim that the IIAP Judgment for funds transferred "with the intent to hinder, delay, or defraud" creditors of IIAP is a debt for "false representations, or actual fraud," under 11 U .S.C. § 523(a)(2)(A) without proof of **the following elements: (1) the debtor made a false representation**; (2) with the intent to deceive plaintiff; (3) plaintiff relied on that representation; (4) the reliance was reasonable; and (5) that the misrepresentation caused the

creditor to sustain a loss. See, *Fowler Bros v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996). . . .

      [Trustee] endeavored to fit the evidence he presented at trial into the *Young* elements by arguing that Vickery misled IIAP by failing to disclose that only $2.4 million of the $6 million raised would be available to IIAP for the acquisition of FCC licenses and the build out of the technology necessary to operate an interactive television system. The evidence was to the contrary. The evidence showed that the principals involved in IIAP, including Dambro and Anneke, IIAP's initial general partner, were well aware of, in fact created, the fund-raising and expense parameters. There was nothing in this regard that was concealed from IIAP, and **there were no misrepresentations on which IIAP reasonably relied. Accordingly, [Trustee]'s § 523(a)(2)(A) claim fails, and the Court will enter judgment in favor of Vickery on this claim**.

*Id*. at *5 (emphasis added). In short, the Colorado Bankruptcy Court rejected Trustee's Section 523(a)(2)(A) argument because Trustee had not proven that Debtor made a false representation. *See generally id*. The Colorado Bankruptcy Court also rejected Trustee's second claim for nondischargeability, asserted under Section 523(a)(4). *Id*. at *6. However, the Colorado Bankruptcy Court ruled in favor of Trustee on its third claim for nondischargeability under Section 523(a)(6). *Id*. at *6. It therefore ordered:

      [T]he IIAP Judgment is a debt for willful and malicious injury by [Debtor] Vickery to IIAP, and judgment will enter in favor of [Trustee] and against Vickery, declaring the IIAP Judgment, in the amount of $4.6 million in actual and punitive damages, plus pre-petition interest of $865,272.48, for a total amount of $5,465,272.48, is non-dischargeable in Vickery's bankruptcy case, pursuant to 11 U.S.C. § 523(a)(6).

*Id*. at *7.

## C.    DEBTOR'S APPEAL TO THIS COURT

      Debtor appealed the Colorado Bankruptcy Court's judgment concerning Section 523(a)(6), in which the Colorado Bankruptcy Court ruled against him, to this Court. *See In re Vickery*, 526 B.R. at 875. The substance of Debtor's appeal, and the rulings

thereon, are irrelevant to the questions presently before this Court.  It addresses

Debtor's appeal only to provide a comprehensive procedural background of this action.

This Court, with Chief Judge Marcia S. Krieger presiding, affirmed on January 26,

2015, the Colorado Bankruptcy Court's determination that the $4.6 million judgment

debt held by Trustee is nondischargeable under Section 523(a)(6).  *Id*. at 881.  Debtor

appealed the Court's Opinion to the Court of Appeals for the Tenth Circuit, but after

appellate briefing, the Tenth Circuit determined it lacked jurisdiction because the Court's

Opinion "isn't a final, appealable order."  *In re Vickery*, 658 F. App'x 398, 401 (10th Cir.

2016).  The Tenth Circuit dismissed Debtor's appeal.  *Id*.

## D.   PANEL TRUSTEE'S APPEAL TO THE TENTH CIRCUIT BANKRUPTCY APPELLATE

Trustee also appealed the Colorado Bankruptcy Court's June 5, 2012 Order,

arguing that the Colorado Bankruptcy Court erred in determining that Trustee had not

proven its claims against Debtor under Section 523(a)(2)(A) (false pretenses, false

representation or actual fraud) and Section 523(a)(4) (fraud or defalcation while acting

in a fiduciary capacity).  *See In re Vickery*, 488 B.R. at 682.  Trustee's appeal was heard

by the Bankruptcy Appellate Panel of the Tenth Circuit ("Tenth Circuit BAP").  *Id*.

With respect to Section 523(a)(2)(A), the Tenth Circuit BAP ruled on March 13,

2013, that the Colorado Bankruptcy Court erred in holding that false representations by

the debtor was an element of "actual fraud" under Section 523(a)(2)(A).  *Id*. at 687; *see*

*In re Vickery*, 2012 WL 2025202 at *5 (stating that "the debtor made a false

representation" is an element of a "false representations or actual fraud" claim under

Section 523(a)(2)(A)).  The Tenth Circuit BAP held:

In order to give full effect to the plain meaning of the disjunctive "or" in § 523(a)(2)(A), we conclude that "actual fraud" is an independent basis for nondischargeability under that subsection. As a result, we reverse the bankruptcy court's pretrial legal conclusion in this regard. The [*McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000)] court's reasoning is persuasive, and we adopt its position that **"actual fraud" under § 523(a)(2)(A) is not limited to misrepresentations** or misleading omissions. As in *McClellan,* we are careful to clarify that only "actual fraud" is covered by § 523(a)(2)(A), not constructive, or implied fraud. As this Court has previously stated, "[t]he term 'fraud' as used in § 523(a)(2)(A) means actual or positive fraud rather than fraud implied by law."

Accordingly, the Trustee may prevail under § 523(a)(2)(A) if he shows that the debt Mr. Vickery owes to IIAP is for money obtained by actual fraud. It is the creditor's (*i.e.,* the Trustee's, standing in the shoes of IIAP) duty to show that those damages (*i.e.,* the debt owed by Mr. Vickery to IIAP) were incurred by actual fraud. Because the bankruptcy court held before trial that proof of actual fraud was not a sufficient showing under § 523(a)(2)(A), and that a misrepresentation had to be shown, it did not have an opportunity to determine whether the Trustee could carry his burden. Thus, the bankruptcy court erred in denying the Trustee an opportunity to prove actual fraud through Mr. Vickery's transfer of assets from IIAP to DIA.

To give the Trustee an opportunity to prove actual fraud, we **remand the § 523(a)(2)(A) claim to the bankruptcy court to apply the correct definition of actual fraud to the facts of this case**. On remand, the Trustee must prove by a preponderance of the evidence that the debt Mr. Vickery owes IIAP was for money obtained by actual fraud. Moreover, because § 523(a)(2)(A) requires *actual* fraud, and not merely constructive fraud, the Trustee must prove the amount of his damages attributable to *actual* fraud. **The bankruptcy court is tasked, therefore, with not only determining whether the debt is for money obtained by actual fraud, but if so, what is the correct measure of damages**.

*In re Vickery*, 488 B.R. at 691–92 (emphasis added).  The Tenth Circuit BAP rejected

Trustee's other arguments on appeal, *id*. at 692–95, none of which are relevant to the

appeal presently before this Court.

Debtor appealed the Tenth Circuit BAP's ruling regarding the elements of actual

fraud under Section 523(a)(2)(A) to the Court of Appeals for the Tenth Circuit, but the

Tenth Circuit dismissed Debtor's appeal for lack of jurisdiction because the Tenth Circuit

BAP had remanded the issue back to the Colorado Bankruptcy Court. *See* (Doc. # 9-1

at 104.)

## E.    ON REMAND TO THE COLORADO BANKRUPTCY COURT

Upon remand, Trustee filed a second Motion for Summary Judgment and a

memorandum in support thereof on December 15, 2016. (*Id.* at 59–61; Doc. # 9-2.)

Trustee asserted:

> [Trustee] is entitled to summary judgment under the doctrine of collateral
> estoppel because the undisputed facts establish that [Trustee] had already
> proven in a prior lawsuit [the IIAP Adversary Proceeding in the California
> federal district court] . . . that [Debor's] indebtedness to [Trustee] . . .
> arises from 'actual fraud' and actions taken with an actual fraudulent intent
> or intent to deceive. These findings, coupled with prior binding
> determinations and admissions in this case, resolve all triable issues
> necessary for this Court to determine that the California Judgment entered
> in [Trustee's] favor . . . and against [Debtor] is nondischargeable.
> Therefore, pursuant to 11 U.S.C. § 523(a)(2)(A), the California judgment
> debt, which was obtained by actual fraud, is not dischargeable in
> bankruptcy. [Debtor] is barred from relitigating the nondischargeability of
> that Judgment.

(Doc. # 9-1 at 59–60.) Debtor responded in opposition to Trustee's Motion for Summary

Judgment on January 30, 2017 (*id.* at 62–82), to which Trustee replied on February 14,

2017 (*id.* at 83–96).

On November 2, 2017, the Colorado Bankruptcy Court issued its Opinion and

Order on Remand Granting in Part Judgment on Nondischargeability Claim Under 11

U.S.C. § 523(a)(2)(A) for Actual Fraud. (*Id.* at 97–121.) This Opinion is presently

before this Court upon Debtor's appeal. As the Court details below, the Colorado

Bankruptcy Court determined that "certain of the debt owed by [Debtor] to [Trustee] is

nondischargeable by reason of 'actual fraud' under Section 523(a)(2)(A) of the

Bankruptcy Code." (*Id.* at 97.)  The Colorado Bankruptcy Court first determined that the determinations of the jury and the California federal district court in the IIAP Adversary Proceeding "are entitled to full collateral estoppel effect and dictate that [Debtor's] liability to [Trustee] on the California First Claim is nondischargeable as 'actual fraud' as a matter of law under Section 523(a)(2)(A)." (*Id.* at 117.)   The Colorado Bankruptcy Court then found that Trustee established that "$1,440,000 in actual and compensatory damages and $400,000 in punitive damages (plus interest at the federal judgment rate . . . and minus any recoveries) are nondischargeable based upon in the California Judgment" in the IIAP Adversary Proceeding.  (*Id.* at 121.)  Consistent with its findings, the Colorado Bankruptcy Court entered judgment in favor of Trustee and against Debtor.  (*Id.*)

## F.    THE INSTANT APPEAL

Approximately two weeks after the Colorado Bankruptcy Court issued its November 2, 2017 Opinion, Debtor filed a Notice of Appeal and Statement of Election with this Court.  (Doc. # 2.)  The Bankruptcy Record on Appeal was filed on December 15, 2017.  (Doc. ## 9–9-4.)  Debtor filed his Opening Brief on January 30, 2018 (Doc. # 13), Trustee filed its Response Brief on February 28, 2018 (Doc. # 14), and Debtor filed his Reply Brief on March 26, 2018 (Doc. # 18.)  Debtor's appeal of the Colorado Bankruptcy Court's November 2, 2017 Opinion is thus ripe for this Court's review.

## II.    APPLICABLE LEGAL STANDARDS

### A.    STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, this Court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. *In re Sonnenschein*, No. 09-cv-00831-LTB, 2009 WL 2449032, *2 (D. Colo. Aug. 10, 2009) (citing 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8013).  The Court reviews the bankruptcy court's findings of fact under a "clearly erroneous" standard and reviews its legal conclusions *de novo*. *In re Warren*, 512 F.3d 1241, 1248 (10th Cir. 2008).  "The burden of proof is on the party seeking to reverse a bankruptcy court's holding." *In re Harwell*, No. 10-cv-00339, 2011 WL 1135382, *2 (D. Colo. Mar. 29, 2011) (quoting *In re Johnson*, 236 B.R. 510, 518 (D.D.C. 1999)).  "That party must show that the [bankruptcy] court's holding was clearly erroneous as to its assessment of the facts or erroneous in its interpretation of the law, and not simply that another conclusion could have been reached." *Id*.

### B.    SUMMARY JUDGMENT STANDARD

The Colorado Bankruptcy Court issued its November 2, 2017 Opinion on summary judgment. *See* (Doc. # 9-1 at 121.)  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Bankr. P. 7056 (applying Fed. R. Civ. P. 56 to bankruptcy adversary proceedings).  A fact is "material" if it is essential to the disposition of the claim under the relevant substantive law. *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-cv-01541-

CMA-CBS, 2017 WL 3425140, at *2 (D. Colo. Aug. 9, 2017).  A dispute is "genuine" if the evidence could lead a reasonable jury to return a verdict in favor of either party. *Medina v. David*, No. 14-cv-03037-CBS, 2016 WL 122970, at *2 (D. Colo. Jan. 8, 2016).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter.  *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1512, 1518 (10th Cir. 1994).  In so doing, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.

The factual record and reasonable inferences therefrom are viewed in the light most favorable to the nonmoving party.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).  However, "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment in favor of the moving party is proper."  *Concrete Works*, 36 F.3d at 1518 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## C.    BURDEN OF PROOF IN THE ADVERSARY PROCEEDING

Under Section 523, a creditor—in this case, Trustee—bears the burden of establishing by a preponderance of the evidence that its claim is not dischargeable.

*Grogan v. Garner*, 498 U.S. 279, 287 (1991); *see In re Manriquez*, No. 08-cv-00567-

CMA, 2009 WL 3015161, *5 (D. Colo. Sept. 17, 2009).

### III.  DISCUSSION

Debtor presents two issues on appeal from the Bankruptcy Court's November 2,

2017 Opinion:

1) Whether the Bankruptcy Court erred in determining that damages awarded on the "First California Claim" against [Debtor] Mr. Vickery were nondischargeable under 11 U.S.C. § 523(a)(2)(A); [and]
2) Whether the Bankruptcy Court erred in determining that a portin [sic] of the punitive damages awarded against [Debtor] Mr. Vickery in the [IIAP] Adversary Proceeding in the amount of $1,000,000 were nondischargeable under 11 U.S.C. § 523(a)(2)(A).

(Doc. # 13 at 2.)  Because these issues challenge the Colorado Bankruptcy Court's

legal conclusions, the Court reviews them *de novo*.  *See In re Warren*, 512 F.3d at

1248.  The Court begins by articulating applicable legal principles and then proceeds to

address Debtor's arguments.

### A.  THE LAW OF ISSUE PRECLUSION/COLLATERAL ESTOPPEL

Trustee moved for summary judgment on its claim of nondischargeability

pursuant to Section 523(a)(2)(A) because "collateral estoppel precludes [Debtor]

Vickery from re-litigating in this action the finding of actual fraud made by the jury" in the

IIAP Adversary Proceeding in the California federal district court.  (Doc. # 9-2 at 24.)

Under collateral estoppel, also known as issue preclusion, "once a court has decided an

issue of fact or law necessary to its judgment, that decision may preclude relitigation of

the issue in a suit on a different cause of action involving a party to the first case."  *SIL-*

*FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990) (quoting *Allen v.*

*McCurry*, 449 U.S. 90, 94 (1980)). "Generally speaking, it is not unfair to deny a litigant a second bite at the apple, and preclusion conserves resources and provides consistency in judicial decisions." *In re Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009). Collateral estoppel applies in bankruptcy court actions to determine the dischargeability of a debt. *In re Shore*, 317 B.R. 536, 541 (10th Cir. BAP (Kan.) 2004) (citing *Grogan*, 498 U.S. at 284 n.11).

The rules of issue preclusion are determined by the law of the forum in which the previous judgment was rendered. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). The judgment in the IIAP Adversary Proceeding was rendered in the United States District Court for the Central District of California, so the law of issue preclusion of that jurisdiction, including law of the Court of Appeals for the Ninth Circuit and the United States Supreme Court, applies to Trustee's summary judgment motion.

Under Ninth Circuit law:

> [C]ollateral estoppel applies only where it is established that: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding."

*Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (quoting *Younan v. Caruso*, 59 Cal. Rptr. 4th 401, 106 (Cal. Ct. App. 1996)). "The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Id.* (quoting *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 850 (9th Cir. 1997)).

The parties in the instant appeal do not dispute that Trustee has satisfied the second and third prerequisites for issue preclusion. As to the second, the IIAP Adversary Proceeding in the California federal district court resulted in a final judgment on the merits. With respect to the third, Debtor, the party against whom collateral estoppel is now being asserted, was a party to the IIAP Adversary Proceeding and defended himself therein. Accordingly, Trustee's issue preclusion defense turns on the first prerequisite: whether the issue at stake—that is, whether Debtor engaged in "actual fraud" under the terms of Section 523(a)(2)(A)—is identical to the one decided in the IIAP Adversary Proceeding.

**B.     ACTUAL FRAUD UNDER SECTION 523(A)(2)(A)**

Trustee's Motion for Summary Judgment is concerned only with the "actual fraud" claim for exception to discharge under Section 523(a)(2)(A). *See* (Doc. # 9-2 at 24.) Section 523(a)(2)(A) provides, in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> > (A) false pretenses, a false representation, or **actual fraud**, other than a statement respecting the debtor's or an insider's financial condition; . . .

11 U.S.C. § 523(a)(2)(A) (emphasis added).

In *Husky International Electronics, Inc. v. Ritz*, the Supreme Court held that "anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud'" under Section 523(a)(2)(A).[3] 136 S. Ct. 1581, 1586 (2016). The Supreme Court explained:

> "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Neal v. Clark,* 95 U.S. 704, 709, 24 L.Ed. 586 (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Ibid.* Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."
>
> Although "fraud" connotes deception or trickery generally, the term is difficult to define more precisely. *See* 1 J. Story, Commentaries on Equity Jurisprudence § 189, p. 221 (6th ed. 1853) (Story) ("Fraud ... being so various in its nature, and so extensive in its application to human concerns, it would be difficult to enumerate all the instances in which Courts of Equity will grant relief under this head"). There is no need to adopt a definition for all times and all circumstances here because, from the beginning of English bankruptcy practice, courts and legislatures have used the term "fraud" to describe a debtor's transfer of assets that . . . impairs a creditor's ability to collect the debt.

*Id.* at 1586–87. Relevant here, the Supreme Court explicitly held that in the context of Section 523(a)(2)(A), the term "actual fraud" encompasses "fraudulent conveyance schemes." *Id.* at 1586. Pursuant to the Supreme Court's holding in *Husky*, "actual fraud" is defined broadly. *See Momoh v. Osayande*, 564 B.R. 1, 3–4 (D.D.C. 2017) ("The Supreme Court has read the term 'actual fraud' broadly to mean 'anything that counts as "fraud" and is done with wrongful intent.'").

---

[3] The Supreme Court, like the Tenth Circuit BAP in this matter, *see In re Vickery*, 488 B.R. at 691–92, also held that a false representation is not an element of actual fraud under Section 523(a)(2)(A). *Husky Int'l Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).

**C. ISSUE I: WHETHER DAMAGES AWARDED ON THE FIRST CLAIM IN THE IIAP ADVERSARY PROCEEDING AGAINST DEBTOR ARE NONDISCHARGEABLE UNDER SECTION 523(A)(2)(A)**

1.    Scope of the issue

As the Court has already explained, Trustee argued in his second Motion for Summary Judgment that "collateral estoppel precludes [Debtor] from re-litigating in this action the finding of actual fraud made by the jury" in the IIAP Adversary Proceeding. (Doc. # 9-2 at 22.)  Trustee's issue preclusion argument is based on the jury verdict in the IIAP Adversary Proceeding, in which the jury "specifically concluded that [Debtor] engaged in a fraudulent conveyance scheme," and the resulting judgment.  (*Id.* at 24–32.)  Notably, Trustee's request for a judgment of nondischargeability only concerns his first claim for relief in the IIAP Adversary Proceeding (and the related punitive damages and interest).  (*Id.* at 24–30.)  His first claim for relief therein was based on "actual intent to hinder, delay, or defraud any creditor of the debtor" under Section 726.105(1)(a) of FUFTA.  (*Id.* at 24–25.)

The question for the Court then is whether the jury's verdict and the judgment entered on Trustee's first claim in the IIAP Adversary Proceeding for "actual intent to hinder, delay or defraud" is identical to a determination of actual fraud under Section 523(a)(2)(A).  This is the first element of Trustee's issue preclusion argument.

The Colorado Bankruptcy Court answered that question affirmatively and held that Trustee's issue preclusion argument thus entitles him to summary judgment in its November 2, 2017 Opinion.  (Doc. # 2-1 at 116–17.)  It concluded:

> So, to sum up, "actual intent to hinder, delay, or defraud" is a form of "actual fraud" under Section 523(a)(2)(A). In the [IIAP] Adversary

Proceeding, the jury determined that [Debtor] Vickery had engaged in a fraudulent transfer conspiracy. More specifically, with respect to the California First Claim, the jury found that Vickery caused IIAP to make a transfer with the "actual intent to hinder, delay, or defraud any creditor of [IIAP]." The jury held Vickery (jointly and severally) liable on the First California Claim and assessed actual and compensatory damages in the amount of $1,440,000. The California Judgment imposed judgment against Vickery for $1,440,000 on the First California Claim. Thus, **the California jury and the California District Court already decided precisely the issue presented in the Second MSJ: whether Vickery engaged in "actual fraud."** Such determinations are entitled to full collateral estoppel effect and dictate that Vickery's liability to Diamond on the California First Claim is nondischargeable as "actual fraud" as a matter of law under Section 523(a)(2)(A).

(*Id.* at 117) (emphasis added).

Debtor contends on appeal that the Colorado Bankruptcy Court's Opinion was erroneous because, in his view, the record of the IIAP Adversary Proceeding "does not show [he] acted with subjective intent to defraud." (Doc. # 13 at 28–34.) In other words, Debtor argues that whether he acted with **wrongful intent**—an element of actual fraud, *see Husky Int'l*, 136 S. Ct. at 1586—was not established by the IIAP Adversary Proceeding. He reasons that because "it has long been established under Florida law that when the legal effect of a conveyance is to delay or hinder creditors, it is fraud in law regardless of the actual motives of the debtor," the jury's verdict on Trustee's first claim "did not establish that [Debtor's] actions" involved an intentional wrong. (Doc. # 13 at 30–32) (citing, *e.g.*, *In re Acquafredda*, 26 B.R. 909 (Bankr. M.D. Fla. 1983)). Simply put, "the jury in the IIAP Adversary Proceeding was *not* required to find that [Debtor] acted with this particularized and malevolent state of mind in order to rule against him" on Trustee's first claim for relief, Debtor asserts. (*Id.* at 32–33.) Because wrongful intent "was not necessarily decided in the [IIAP] Adversary

Proceeding," Debtor argues that "collateral estoppel does not apply" and the judgment in the IIAP Adversary Proceeding "remains dischargeable notwithstanding the provisions of 11 U.S.C. § 523(a)(2)(A)." (*Id.* at 33.)

For the reasons discussed below, the Court affirms the legal conclusions of the Colorado Bankruptcy Court. Debtor has not carried his burden on appeal to demonstrate that the Colorado Bankruptcy Court's conclusions were erroneous. *See In re Harwell*, 2011 WL 1135382 at *2.

2.     Analysis

The Court is satisfied that the jury's verdict and the subsequent judgment on Trustee's first claim in the IIAP Adversary Proceeding necessarily decided that Debtor acted with wrongful intent. Trustee has therefore established the first element of issue preclusion, and issue preclusion prevents Debtor from relitigating the jury's finding of actual fraud in the IIAP Adversary Proceeding. Pursuant to Section 523(a)(2)(3), the judgment entered against Debtor on Trustee's first claim in the IIAP Adversary Proceeding is nondischargeable.

First, there is an identity of issues between Trustee's first claim for relief in the IIAP Adversary Proceeding and its Section 523(a)(2)(A) claim in the instant action. Trustee's first claim for relief in the former was brought under Section 726.105(1)(a) of FUFTA, which provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor;

Fla. Stat. § 726.105(1)(a).  "The statute requires '[1] a creditor to be defrauded, [2] **a debtor intending fraud**, [3] and a conveyance of property which is applicable by law to the payment of the debt due.'"  *Wiand v. Lee*, 754 F.3d 1194, 1199–1200 (11th Cir. 2014) (emphasis added) (quoting *Johnson v. Dowell*, 592 So.2d 1194, 1196 (Fla. Dist. Ct. App. 1992)).  In short, that the debtor acted with fraudulent, wrongful intent is an indispensable element of a claim under Section 726.105(1)(a) of FUFTA.  Thus, the elements of a claim under Section 726.105(1)(a) of FUFTA are virtually identical to those required for a judgment for actual fraud under Section 523(a)(2)(A).  Under Section 523(a)(2)(A), "anything that counts as 'fraud' and is done with **wrongful intent** is 'actual fraud.'"  *Husky Int'l*, 136 S. Ct. at 1586 (emphasis added).  Put simply, wrongful intent is an element of actual fraud pursuant to both Section 726.105(1)(a) of FUFTA and Section 523(a)(2)(A) of the Bankruptcy Code.  There is an identity of issues between the claims.  Accordingly, the Colorado Bankruptcy Court properly granted Trustee's second Motion for Summary Judgment.

Second, Debtor's argument on appeal does not persuade the Court otherwise. His contention that Florida law "differ[s]" in that "it is fraud in law regardless of the actual motives of the debtor" "when the legal effect of a conveyance is to delay or hinder creditors" overemphasizes a scattering of decisions by Florida state courts concerning prior and differently worded statutes—not Section 726.105(1)(a) of FUFTA.  (Doc. # 13 at 30.)  Debtor himself acknowledges that his case law is based on "the statutory predecessor of the provision [Trustee] asserted" in the IIAP Adversary Proceeding.  (*Id*. at 31.)

Debtor's argument is also flawed by virtue of assuming that the jury in the IIAP

Adversary Proceeding, upon being instructed on the elements of Trustee's first claim for

relief under Section 726.105(1)(a) of FUFTA, would understand the statute to conform

to the language of these outdated decisions.   There is no evidence in the record that the

jury was instructed that it could find fraud under Trustee's first claim for relief

"regardless of actual motives of the debtor."   Rather, the transcript of the IIAP Adversary

Proceeding shows quite the opposite.   The jury was instructed that fraudulent intent was

an element of Trustee's first claim for relief:

> There are three types of fraudulent transfers or obligations which are relevant in this action. If you find by a preponderance of the evidence that any one of these three types of transfers or obligations has occurred, your verdict should be for the plaintiff. . . .
>
> [As to Trustee's/the plaintiff's first claim:]   1. A transfer or the incurring of an obligation by a debtor is fraudulent as to any creditor whether the creditor's claim arose before or after the transfer was made or obligation incurred if the debtor made the transfer or incurred the obligation with the **actual intent** to hinder, delay or defraud any creditor of the debtor. . . .
>
> This is an instruction that attempts to give you guidance as to what's meant by actual intent because you remember in an early instruction the Court uses the expression **intent to defraud**.  Actual intent is seldom proved by direct evidence because persons whose intention is to shield their assets from a creditor attack rarely announce their purpose. Therefore, Florida Uniform Fraudulent Transfer Act states that actual intent must be determined based on infrences [sic] drawn from the action of the debtor.   Based on a review of factors considered by law to be "badges of fraud" or fact patterns that tend to show **fraudulent intent**.

(Doc. # 9-3 at 1360–62) (emphasis added).

Finally, the jury's verdict on Trustee's first claim for relief dissolves any lingering

doubt that it necessarily decided Debtor engaged in actual fraud under Section

523(a)(2)(A).   The jury's unanimous verdict read in relevant part:

First cause of action: that debtor made a transfer or incurred an obligation with the **actual intent to hinder, delay or defraud** any creditor of the debtor.

No. 1. Do you the jury in the above-entitled action unanimously find in favor of the Plaintiff [Trustee] as Chapter 7 trustee for the bankruptcy estate of [IIAP] and against defendants.

. . .

3. Terry Vickery: Yes.

. . .

No. 2. We the jury unanimously find that the defendants' actions in this case were part of a conspiracy to have the debtor make **fraudulent transfers** to them or for their benefit.

. . .

3. Terry Vickery: Yes.

. . .

 (*Id*. at 1377–78) (emphasis added).  The Court agrees with Trustee that the jury's verdict reflects that it "specifically found [Debtor] acted with the intent to defraud."[4]  *See* (Doc. # 14 at 25.)

In sum, the Court is satisfied that the jury in the IIAP Adversary Proceeding, in finding in favor of Trustee and against Debtor on Trustee's first claim for relief, necessarily decided that Debtor engaged in actual fraud under Section 523(a)(2)(a). The jury's determination that Debtor engaged in actual fraud is entitled to full collateral effect.  The Court therefore affirms the Colorado Bankruptcy Court's conclusion that Debtor's liability to Trustee on the first claim for relief in the IIAP Adversary Proceeding is nondischargeable as actual fraud as a matter of law under Section 523(a)(2)(A).  *See*

---

[4] Additionally, the jury verdict explicitly found that Debtor was "part of a conspiracy to . . . make fraudulent transfers."  *Husky* confirms that "fraudulent conveyance schemes" constitute actual fraud under Section 523(a)(2)(A).  136 S. Ct. at 1586.

(Doc. # 9-1 at 21.)  Debtor remains liable to Trustee for $1,440,000 in actual and

compensatory damages for actual fraud.[5]

**D.     ISSUE II: WHETHER $400,000 IN PUNITIVE DAMAGES AWARDED IN THE IIAP ADVERSARY PROCEEDING IS NONDISCHARGEABLE UNDER SECTION 523(A)(2)(A)**

   1.     <u>Relevant findings of fact</u>

   As the Court explained in the procedural background, after the jury returned

verdicts for Trustee and assessed damages on Trustee's first, second, and third claims

for relief in the IIAP Adversary Proceeding, they "answered 'yes' in response to three

interrogatories as to whether the Debtor had acted maliciously, oppressively, and in

reckless disregard of IIAP creditors' rights."  *In re Vickery*, 526 B.R. at 878–79; *see*

(Doc. # 9-3 at 1381–82) (transcript of the jury's verdict being announced).  The

California federal district court then took a brief recess and reconvened the jury "for the

punitive damage phase of trial" (Doc. # 9-3 at 1387–88), during which the parties

presented additional testimony and argument regarding punitive damages.  In closing

arguments in the punitive damages phase of the trial, Trustee asked the jury "to award

punitive damages to punish [defendants] in the amount of two times the amount that [it]

already awarded" in the first phase of the trial for Trustee's first, second, and third

claims for relief.  (*Id.* at 1407.)  Debtor, as well as defense counsel for other defendants,

asked the jury to award Trustee no punitive damages.  (*Id.* at 1407–09.)

   The court then instructed the jury on punitive damages:

---

[5] It is undisputed that the IIAP Adversary Proceeding resulted in a judgment against Debtor for $1,440,000 on Trustee's first claim for relief.

Having found for the plaintiff [Trustee], you may, but are not required to award punitive damages. The purposes of punitive damages are not to compensate the plaintiff, but to punish a defendant and to deter a defendant and others from committing similar acts in the future. The plaintiff has the burden of proving that punitive damages should be awarded and the amount by a preponderance of the evidence. You may award punitive damages only if you find the defendant's conduct was malicious, oppressive or in reckless disregard of the plaintiff's rights.

And you have found that by answering the special verdict form[.] [D]id you find the conduct to be malicious? You said yes. If you find the conduct to be in reckless disregard of the plaintiff's rights under the circumstances, you said yes. And the other question was did you find the conduct to be oppressive and you answered yes.

The Court previously defined those terms for you and they are included in the jury instruction that you already have, which is Instruction No. 34. . . .

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes, but not should [sic] reflect bias, prejudice or sympathy towards any party. In considering punitive damages, you may consider the degree of reprehensibility of the defendants' conduct and the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff. You may impose punitive damages against one or more of the defendants and not others. And you may award different amounts against different defendants.

(*Id.* at 1410–11.)

The jury returned shortly thereafter with "a unanimous decision on the punitive damage phase." (*Id.* at 1412.) The jury's verdict form read:

Do you the jury unanimously find that punitive damages should be awarded on behalf of the plaintiff [Trustee] and against defendants:
. . .
3. Terry Vickery: Yes.
If yes, in what amount? The amount is $1 million.

(*Id.* at 1412–13.)

Accordingly, the California federal district court entered judgment in the amount of $1,000,000 in punitive damages for Trustee and against Debtor individually. *See* (*id.* at 1420.)

2. Scope of the Issue

In moving for summary judgment, Trustee sought damages against Debtor in the amount of $2,615,694.46 pursuant to Section 523(a)(2)(A):

> (1) $1,440,000.00 in Actual Damages for "actual fraud" under FUFTA;
> (2) **$1 million in Punitive Damages**;
> (3) Interest of $801,478.46 as of December 15, 2016.
> (4) To date, Diamond has recovered the total amount of $625,784.00. After crediting the recovered amounts and adding accrued interest, Diamond's current damages for purposes of this motion are $2,615,694.46.

(Doc. # 9-2 at 21–22) (emphasis added). Relevant here, Trustee argued that "[i]n addition to compensatory damages, the punitive damages awarded against [Debtor] in the [IIAP Adversary Proceeding] judgment should also be ruled nondischargeable." (*Id.* at 32.) He asserted that any debt arising from specific money or property obtained by fraud is excepted from discharge and that "the punitive damages awarded by the jury in the [IIAP Adversary Proceeding] constitute a debt arising from money obtained by actual fraud under Section 523(a)(2)(A)." (*Id.*) (citing *Cohen v. de la Cruz*, 523 U.S. 213 (1998)).

The question for the Court is, as the Tenth Circuit BAP framed it, "what is the correct measure of damages." *In re Vickery*, 488 B.R. at 692.

Importantly, it is undisputed that nondischargeable debt under Section 523(a)(2)(A) is not limited to the actual amount received by the debtor through fraud; it

also includes punitive and compensatory damages. *See Cohen*, 523 U.S. at 217

("'[A]ny debt . . . for money, property, services, or . . . credit, to the extent obtained by'

fraud encompasses any liability arising from money, property, etc., that is fraudulently

obtained, including treble damages, attorney's fees, and other relief that may exceed

the value obtained by the debtor."); *In re Barber*, 326 B.R. 463, 467 (10th Cir. BAP

(Wyo.) 2005) ("As a matter of law, nondischargeable debt under § 523(a)(2)(A) is not

limited to the actual value a debtor obtains through fraud, but includes punitive and

compensatory damages.").

In its November 2, 2017 Opinion, the Colorado Bankruptcy Court ruled that

$400,000 of the $1,000,000 in punitive damages Debtor owes Trustee pursuant to the

judgment in the IIAP Adversary Proceeding is nondischargeable under Section

523(a)(2)(A) for actual fraud. (Doc. # 9-1 at 120.) The Colorado Bankruptcy Court

explained:

> The Court determines that **the California jury awarded $400,000 in punitive damages attributable to the $400,000 in actual and compensatory damages assessed on the First California Claim**. Under *de la Rosa* [sic] and its progeny, [Trustee] is only entitled to include $400,000 in punitive damages (not the entire $1,000,000 in punitive damages) as part of his nondischargeability claim. The Court finds that [Trustee] has established that he is owed punitive damages of $1,000,000, but only a $400,000 portion of punitive damages is nondischargeable under Section 523(a)(2)(A) for "actual fraud."

(*Id.*) (emphasis added).

Debtor argues on appeal that the Colorado Bankruptcy Court's conclusion that a

portion of the punitive damages awarded against him in the IIAP Adversary Proceeding

is nondischargeable is incorrect because punitive damages "were awarded only on the

Third Claim for Relief in [the IIAP Adversary Proceeding], which [Trustee] concedes is dischargeable." (Doc. # 13 at 34–36.) Specifically, Debtor contends that the jury "made the predicate finding for an award of punitive damages—that the defendants . . . acted maliciously, oppressively, or in wanton disregard of the plaintiff's [Trustee's] rights—only with regard to the Third Claim for Relief" (constructive fraud under Section 726.105(1)(b)(2) of FUFTA).[6] (*Id.* at 35.) He faults the Colorado Bankruptcy Court for disregarding the transcript of the trial and "attempt[ing] to reason through the matter and adopt[] a version of events it regarded as more reasonable than what was disclosed by the actual written record." (*Id.*)

Notably, Debtor does not contest the Colorado Bankruptcy Court's methodology for allocating $400,000 of the $1,000,000 punitive damages award against Debtor in the IIAP Adversary Proceeding to Trustee's first claim for relief in that proceeding. He only challenges the Colorado Bankruptcy Court's threshold determination that punitive damages were awarded at all on Trustee's first claim for relief in the IIAP Adversary Proceeding.

3. Analysis

a. *Debtor's argument that punitive damages were awarded only in relation to Trustee's third claim for relief in the IIAP Adversary Proceeding lacks support in the record.*

As the Court just summarized, Debtor argues that in the IIAP Adversary Proceeding, punitive damages "were awarded only on [Trustee's] Third Claim for

---

[6] The Court observes that Debtor raised this same argument before the Colorado Bankruptcy Court (Doc. # 9-1 at 77–78), and the Colorado Bankruptcy Court explicitly rejected it as having "absolutely no support" in the record of the IIAP Adversary Proceeding (Doc # 9-1 at 118).

Relief," which in turn does not support a nondischargeable judgment.  (Doc. # 13 at 35.)

This argument fails spectacularly.  As should be evident from the Court's findings of fact

on this issue, the Court has carefully examined the transcript of the IIAP Adversary

Proceeding, as well as the findings of fact in the opinions and orders of the Colorado

Bankruptcy Court.  Nothing in the transcript or in the various findings of fact support

Debtor's characterization of the punitive damages award.

Debtor's argument depends entirely on the fact that the jury verdict form in the

IIAP Adversary Proceeding required the jury to consider whether the defendants acted

maliciously, oppressively, or in reckless disregard of Trustee's rights immediately after

the verdict form had required the jury to render verdicts and award actual or

compensatory damages on Trustee's first, second, and third claims for relief.  *See* (Doc.

# 9-3 at 1380–82.)  Viewed in isolation, this fact might be sufficient to enable Debtor to

survive Trustee's Motion for Summary Judgment.  However, when viewed in the context

of the rest of the transcript, no reasonable finder of fact could conclude that the jury's

determinations that the defendants acted maliciously, oppressively, and in reckless

disregard of Trustee's rights and the jury's award of punitive damages only concerned

Trustee's third claim for relief, for constructive fraud.

First, nothing in the first verdict form cabined the jury's consideration of whether

the defendants acted maliciously, oppressively, and in reckless disregard of Trustee's

rights to only Trustee's third claim for relief.  Nor is there any reason in the law or logic

why that would have been the California federal district court judge's intent.

Second, as the Court found above, the California federal district court conducted a second, **entirely separate** phase of the trial to address punitive damages after the jury had returned its verdicts on Trustee's three claims for relief and had found that defendants acted maliciously, oppressively, and in reckless disregard of Trustee's rights.  Nothing in the record suggests that the court, counsel, or the jury were under the impression that punitive damages were only to be awarded on Trustee's third claim for relief.  The transcript indicates quite the opposite: that the court, counsel, and the jury understood that Trustee's request for punitive damages flowed from all three of its claims for relief.

For example, a colloquy between the judge and counsel before the first set of jury instructions was read to the jury reflects that the judge and counsel agreed that the judge would use language in the first "**general** verdict form that says do you find that **the conduct** was malicious?  Do you find that the conduct was reckless, et cetera?" (Doc. # 9-3 at 134) (emphasis added).  There was no mention in the colloquy of the "malicious . . . reckless, et cetera" questions to the jury concerning only Trustee's third claim for relief.  Rather, those questions were to be asked on a "general" verdict form about "the conduct" broadly.

As another example, the Court looks to the punitive damages instructions themselves.  *See* (*id.* at 1410–11.)  In relevant part, the California federal district court instructed the jury:

> You may award punitive damages only if you find the **defendant's conduct** was malicious, oppressive or in reckless disregard of the plaintiff's rights.

> . . . In considering punitive damages, you may consider the degree of reprehensibility of the defendants' conduct and the relationship of any award of punitive damages to **any** actual harm inflicted on the plaintiff.

(*Id.*) (emphasis added). The court also instructed the jury to "consider **all** the previous instructions that the court . . . already read" in the first phase of the trial when it awarded punitive damages, if any. (*Id.* at 1410) (emphasis added). If the court had intended the jury to limit its consideration of punitive damages to the conduct alleged in Trustee's third claim for relief, it surely would not have instructed the jury to consider "the defendant's conduct generally, "any actual harm," and "all the previous instructions." In light of the punitive damages instructions given to the jury, the Court cannot reasonably infer that the jury understood that they were to award punitive damages only on Trustee's third claim for relief.

For these reasons, the Court soundly rejects Debtor's contention that punitive damages were awarded only with respect to Trustee's third claim for relief. The Court agrees with the Colorado Bankruptcy Court that the judgment in the IIAP Adversary Proceeding did not contain an express allocation of the punitive damages amongst Trustee's three claims for relief. *See* (Doc. # 9-1 at 119.)

> b.    The Colorado Bankruptcy Court did not err in determining that $400,000 of the $1,000,000 punitive damages award against Debtor in the IIAP Adversary Proceeding is traceable to Trustee's first claim for relief and is thus nondischargeable.

As the Court observed above, Debtor does not take issue with the Colorado Bankruptcy Court's methodology for allocating $400,000 of the $1,000,000 punitive

damage award against Debtor in the IIAP Adversary Proceeding to Trustee's first claim for relief in that proceeding.  Debtor has therefore not carried his burden on appeal to demonstrate that the Colorado Bankruptcy Court's allocation was erroneous.  *See In re Harwell*, 2011 WL 1135382 at *2.  The Court has nevertheless reviewed the Colorado Bankruptcy Court's methodology, *see* (Doc. # 9-1 at 119–120), and finds no error. The Court affirms the Colorado Bankruptcy Court's conclusion that a $400,000 portion of the punitive damages award against Debtor is nondischargeable under Section 523(a)(2)(A) for actual fraud.

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that the November 2, 2017 Opinion of the Colorado Bankruptcy Court is AFFIRMED.

DATED: March 29, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge